IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | : |
| Petitioner, | : |
| vs. | : CA 14-00320-KD-C |
| BOBBY SMITH and SHELIA SMITH, | : |
| Respondents. | : |

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint for declaratory judgment (Doc. 1), the respondents' answer and counterclaim (Doc. 14), Progressive Specialty Insurance Company's (hereinafter, "Progressive") motion to dismiss counterclaim (Doc. 18), the Smiths' response in opposition (Doc. 22), and the moving party's reply (Doc. 24). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **DENY** petitioner's motion to dismiss the respondents' counterclaim (Doc. 18).

## FINDINGS OF FACT

As previously observed by the Court, "[t]he Smiths insured their RV with Progressive." (Doc. 29, at 1.) Indeed, Shelia Smith contacted Progressive on April 30, 2014, and reinstated the policy of insurance on the RV, bearing policy number 32817137-8, at 9:59 a.m., that lapsed on April 4, 2014. (*Compare* Doc. 14, at 4-5 *with* Doc. 1, ¶ 6.) And, "[w]hile parked at a campground in Baldwin County, Alabama, rising river waters flooded the RV." (Doc. 29, at 1.) For its part, petitioner contends that torrential

rains fell in Baldwin County on April 29-30, 2014, with no rain occurring on May 1, 2014 (Doc. 1, at ¶ 7), and it is Progressive's belief that "there was flooding in the area where the insured RV was located prior to" May 1, 2014 (*id.*). The Smiths contend that the damage sustained by their RV due to rising-river waters occurred on May 1, 2014 (Doc. 14, at 5) and that same day they made a claim under their Progressive policy for the total loss of their RV (*compare* Doc. 29, at 1 *with* Doc. 1, at ¶ 7).

On May 13, 2014, Progressive notified Bobby Smith by letter that it had completed a "thorough investigation of th[e] claim" and though it attempted "to provide coverage[,]" it "regret[ted] to inform [the insureds] that [their] claim [could not] be covered by Progressive Insurance." (Doc. 22, Exhibit 1, at 1; *see also id.* ("Our investigation determined that the loss occurred before the policy reinstated on April 30, 2014 at 9:59 am Eastern Time. This decision is based on, but not limited to, information provided by you, inspection of the property and the insuring agreements, per your policy contract, listed below.").) While an explicit denial of coverage appears clear from this language, on the next page of the letter the claims agent does not do a total about-face but does tergiversate by informing the Smiths that it was necessary for Progressive Insurance to "conditionally deny the claim[.]" (*Id.* at 2; *see also id.* ("If you can provide us with any additional information or documentation that may alter our decision in any way, please do not hesitate to contact us at the telephone number provided below.").)

On June 3, 2014, Phil E. Miley, Esquire, penned a letter to the above-referenced claims agent, Jake Degroot, and therein requested that Progressive "immediately undertake to properly adjust the[] loss [suffered by his clients] and pay to [the Smiths] the agreed upon value of the motorhome as provided in the policy [of insurance]." (Doc. 24, Exhibit 1, at 1.) Progressive was informed that if proper payment was not made within thirty (30) days, the Smiths would file suit seeking the "proceeds of the

2

policy of insurance along with penalties, attorney fees, court costs, and additional appropriate damages." (*Id*. at 2.) One day prior to the expiration of that 30-day period, that is, on July 2, 2014, Shelia Pourciau Smith and Bobby H. Smith, Sr. sat for their examinations under oath (*see* Doc. 24, Exhibits 2 & 3), as allowed by their policy of insurance (*see* Doc. 24, Exhibit 3, Examination Under Oath of Shelia Pourciau Smith, at 5). Shelia Smith maintained that she and her husband received their first notification of rising floodwaters in Riverside RV Park during the morning of May 1, 2014 (*see id*. at 30) and later that day learned their RV had flooded (*see id*. at 45). In addition, Mrs. Smith testified that she and her husband received information that there was flooding in Baldwin County on March 30, 2014, but that the RVs in the park, including their RV, were not in peril of the floodwaters. (*Id*. at 49-50; *see also id.* at 57 (no one told she or her husband that their motorhome was underwater on April 30, 2014).)

> Q   Has anybody told you at all that the people were evacuated from the park as early as April 29th?
>
> A   No.
>
> Q   You don't have any knowledge of that?
>
> A   No, sir.
>
> Q   Okay. Do you have any knowledge that people were evacuated from the park on April 30th?
>
> A   No, sir.
>
> Q   Nobody has told you that?
>
> A   No, sir.
>
> Q   Nobody at Styx River has told your husband that to your knowledge?
>
> A   To my knowledge, no, sir.
>
> . . .

3

> Q    Our investigation shows that the flooding of Riverside [RV Park] began late night on April the 29th to early morning on April 30th. And my question to you is: Other than the three gentlemen you have told me about, do you know of any other information that would contradict that?
>
> A    Not at this time.
>
> . . .
>
> Q    Okay. My question was, do you have anything that would dispute that someone in Riverside RV [Park] who had a trailer in that park called before 3:00 p.m. on April 30th reporting that their trailer was underwater?
>
> A    No.

(*Id*. at 95, 96 & 102; *see* Doc. 24, Exhibit 2, Examination Under Oath of Bobby H. Smith, Sr., at 39 & 44 ("Q Okay. So if we have information that the park was flooded on both the 29th and 30th of April—the RV park, Riverside is what I'm referring to. If we have information about that being flooded on the 29th and 30th, do you think that's mistaken? A It is that because it wasn't flooded then. . . . Q . . . And so if they, among other things, had a report from somebody in Riverside RV park that called in on the 30th of April and said my trailer is underwater, that would be a good way for them to tell when the flood took place, wouldn't it? A That would be a good way, but I . . . know mine went under May the 1st. Q But you weren't there? A No, I wasn't there. Q And you know it based upon what other people have told you? A Yeah.").)[1]

Nine days after the Smiths' examinations under oath, on July 11, 2014 (Doc. 1), Progressive filed this declaratory judgment action seeking a declaration as to coverage on the basis that the "total loss of the insured RV may have occurred prior to the

---

[1] Bobby Smith agreed with Mr. Hitson that if their motorhome was flooded on April 30, 2014, his policy with Progressive would not cover the loss but that because the flooding did not occur until after 12:01 a.m. on May 1, 2014, there was coverage under the reinstated policy. (*Id.* at 41-42.)

reinstatement of the Policy" and/or "prior to the beginning of the policy period, which was May 1, 2014." (*Id.* at 5; *see also* Doc. 29, at 1 ("Progressive filed this declaratory judgment action seeking a declaration as to coverage on [the] basis that the loss may have occurred prior to the beginning of the Smiths' renewed policy period and may have occurred outside the coverage period of their policy that had lapsed.").) On August 13, 2014, the Smiths filed their answer and counterclaim. (Doc. 14.) Therein, the Smiths assert three counterclaims: breach of contract, bad faith, and unjust enrichment. (*Id.* at 5-8.)

Progressive filed its motion to dismiss counterclaim on August 26, 2014. (Doc. 18.) Therein, petitioner seeks to dismiss the respondents'/counterclaim plaintiffs' counterclaim without prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (*See id.* at 1.) Progressive takes the position that none of the claims the Smiths assert in their counterclaim are ripe for adjudication in light of its filing of the instant declaratory judgment action and requesting the Court to grant the relief set forth in the complaint. (*Compare id.* at 2 ("Progressive filed the Declaratory Judgment action for the Court to examine the facts at issue in this case and make a declaration as to whether or not Progressive is required to provide Comprehensive Coverage for the loss claimed by the Respondents to have occurred [o]n May 1, 2014. No non-performance has been made under the contract.") *with id.* at 3 ("Progressive has alleged in its Complaint for Declaratory Judgment legitimate and arguable reasons why there may not be coverage for Respondent/Counterclaim Plaintiffs' claim, and requested that the Court make a determination as to whether Comprehensive Coverage exists under the insurance policy issued by Progressive, which would potentially be applicable to the alleged May 1, 2014, loss at issue in this case. Therefore, Respondents/Counterclaim Plaintiffs' Bad Faith claim is not ripe for adjudication. . . . Th[e] [third] Count fails on its

5

face in that Progressive has not been unjustly enriched in this case. In fact, all of the premium paid by the Respondents/Counterclaim Plaintiffs have been paid back into the Court. Therefore, Progressive did not benefit from or been unjustly enriched by its receipt and use of Respondents'/Counterclaim Plaintiffs' premium payment. This Count clearly fails to state a claim upon which the Court has subject matter jurisdiction.").

> In *Andersen v. Omni Ins. Co.*, 2014 WL 838811 (N.D. Ala. March 4, 2014), the United States District Court, Northern Division of Alabama, Eastern Division, addressed a similar issue. Omni Insurance Company filed a Motion to Dismiss Andersen's Bad Faith claim filed against it based on the lack of subject matter jurisdiction pursuant to *Federal Rule[] of Civil Procedure* 12(b)(1). The Court citing *Pontius v. State Farm Mut. Auto. Ins. Co.,* 915 So.2d 557 (Ala. 2006) and *Ex parte Safeway Ins. Co.,* 990 So.2d 344 (Ala. 2008), opined that bad faith and breach of contract actions are premature without the presence of a justiciable controversy. Therefore, the Court determined that the claims should be dismissed without prejudice to allow the insured to bring the action when it presented a justiciable controversy. Before the Court now is a similar situation, the Respondents/Counterclaim Plaintiffs simply cannot bring a Breach of Contract claim, Bad Faith claim or Unjust Enrichment claim at this time because the court lacks subject matter jurisdiction over such claims.

(*Id.* at 4.) In their response in opposition, the Smiths contend that their claims are ripe for adjudication in light of Progressive's May 13, 2014 denial of their claim. (Doc. 22, at 4-6.) "Respondents contend that this denial constitutes a breach of contract and was made in bad faith,[2] and clearly, those issues are 'ripe for adjudication' as the claim has been denied and the Counterclaim specifically pleads that Progressive breached the insurance contract and committed bad faith by doing so." (*Id*. at 5 (footnote omitted and

---

[2] "As for unjust enrichment, Progressive makes no mention of the sums owed to Respondents in the form of insurance coverage which Progressive never tendered to Respondents." (Doc. 22, at 4 n.2.)

another supplied).)[3] In reply, Progressive contends that its motion to dismiss is due to be granted since "there has been no actual denial of the claim for benefits to satisfy the elements of bad faith under Alabama law, or a claim for breach of the insurance contract by refusing to indemnify the insured[]s['] alleged loss.[4] Secondly, the counterclaim fails to sufficiently plead a 'constructive' denial of the claim for benefits. Thus, the counterclaim is due to be dismissed." (Doc. 24, at 2; *see also id*. at 2-5 (footnote added).)

## CONCLUSIONS OF LAW

A. **Motion to Dismiss Standard**.

---

[3] The respondents distinguish the cases relied upon by Progressive in the following manner:

> Progressive cites, as supporting authority, a series of UM bad faith cases that have no application to the issue before this Court, namely[] whether counterclaims for breach of contract and bad faith are ripe for adjudication where an insurer denies an insurance claim and subsequently files a declaratory judgment [action]. Progressive relies on Anderson v. Omni Insurance Co., 2014 WL 838811 (N.D. Ala. March 4, 2014). In Anderson, an injured motorist filed an uninsured motorist claim and a bad faith claim against its (sic) automobile insurance carrier. The UM carrier moved to dismiss the bad faith claim and the motorist's lawyer never responded. The Anderson court granted the motion relying on Pontius v. State Farm Mutual Automobile Insurance Co., 915 So.2d 557 (Ala. 2006) and Ex parte Safeway Insurance Co., 990 So.2d 334 (Ala. 2008). Anderson, Pontius and Safeway all involved uninsured motorist insurance, which makes them distinguishable. In a UIM context, the insurer is adverse to its insured and the liability of the carrier does not arise until the liability of the tortfeasor and the damages of the plaintiff are fixed. This is not the situation here, where the Smiths suffered a covered loss which Progressive had a duty to pay. In addition, the Alabama Supreme Court has recently held that the fact that an insured had not previously proven liability or damages did not warrant dismissal of a bad faith claim against an uninsured motorist carrier on ripeness or lack of subject matter grounds. See Ex parte Safeway Insurance Co. of Alabama, 2013 WL 5506557 (Ala. 2013).

(*Id*. at 5 n.5.)

[4] In making the argument that Progressive made no express or actual denial of the Smiths' claim, Progressive cites to the entirety of its May 13, 2014 letter and to the examinations under oath of the Smiths. (*See id.* at 2-3.)

7

The plaintiff initially brought its motion to dismiss solely pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. 18.) A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction

> can be based upon either a facial or factual challenge to the complaint. If the challenge is facial, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." [*Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)]. Accordingly, the "court must consider the allegations in the plaintiff's complaint as true." *Id.*
>
> A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* Furthermore, in *Williamson*, the former Fifth Circuit held that "[t]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

*McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007); *see also Andersen v. Omni Ins. Co.*, 2014 WL 838811, *1 (N.D. Ala. Mar. 4, 2014) ("Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—

8

the court must consider the allegations of the complaint to be true. But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." (internal emphasis, citations, brackets, and most quotation marks omitted)). The undersigned construes Progressive's jurisdictional argument—the petitioner having failed to specifically pigeonhole its jurisdictional attack—as a factual challenge because the petitioner never accepts the respondents'/counterclaim plaintiffs' allegations as true for purposes of its motion[5] (*compare* Doc. 18, at 2 & 3 ("No non-performance has been made under the contract. . . . Progressive has alleged in its Complaint for Declaratory Judgment legitimate and

---

[5] The undersigned notes that, in *Lawrence v. Dunbar, supra*, the Eleventh Circuit held that "federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact." 919 F.2d at 1531. That case involved a Rule 12(b)(1) motion to dismiss based on a "factual attack" on subject matter jurisdiction. *Id.* at 1529-1530. The district court dismissed the case for lack of subject matter jurisdiction after considering evidence and relying on the affidavit of a non-party to resolve a factual dispute between the parties as to whether one of the defendants, a federal employee, acted within the scope of his employment. *Id.* The Eleventh Circuit vacated the district court's opinion dismissing the case for lack of subject matter jurisdiction because the district court applied the wrong legal standard. *Id.* at 1530. The Eleventh Circuit concluded that "[w]hen the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Id.*, citing *Williamson v. Tucker*, 645 F.2d 404, 415-416 (5th Cir. 1981).

arguable reasons why there may not be coverage for Respondent/Counterclaim Plaintiffs' claim[.]") *with* Doc. 24, at 2-3).[6]

---

[6] Because Progressive makes mention of Rule 12(b)(6) in its reply, in arguing that the Smiths have failed to sufficiently plead a constructive denial in their counterclaim (Doc. 24, at 4-5), the undersigned need note that a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 & 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more

(Continued)

**B.     May this Court Exercise Subject Matter Jurisdiction Over the Respondents' Counterclaims?** Before addressing the arguments made by petitioner, the undersigned delineates the elements of each of the Smiths' counterclaims. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009) (internal quotation marks and citation omitted).

---

> than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. 680, 129 S.Ct. at 1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. U.S. Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to belief above the speculative level.'"); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in [p]laintiff's favor, but we are not required to draw plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." (internal citations and quotation marks omitted)), *abrogated on other grounds as stated in Mohamad v. Palestinian Auth.*, __U.S.__, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

With respect to Progressive's argument in this regard, the undersigned merely notes that to the extent petitioner is correct that the Smiths' counterclaim does not sufficiently plead "constructive denial," *compare, e.g.*, *New Hampshire Ins. Co. v. Blue Water Off Shore, LLC*, 2008 WL 682400, *3 (S.D. Ala. Mar. 7, 2008) ("While an actual denial is a fact, a constructive denial is, as the term implies, a legal construct; if certain facts exist, then a denial is deemed to exist. . . . A constructive denial arises upon the confluence of a sufficient delay and a wrongful intent.") *with Congress Life Ins. Co. v. Barstow*, 799 So.2d 931, 938 (Ala. 2001) ("In Alabama, a plaintiff can establish a constructive denial in two ways: (1) by showing that the passage of time is so great that the delay alone creates a denial; or (2) by showing sufficient delay in payment coupled with some wrongful intent by the insurance company." (citations and quotation marks omitted)), the undersigned reads their proposed amended answer and counterclaim as sufficiently pleading "constructive denial" (*see* Doc. 34, Exhibit A) and recommends that the Court grant the proposed amendment.

Moreover, "[u]nder Alabama law, the insured bringing a claim of bad faith against its insurer must prove the following elements: '(a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insured's actual knowledge of the absence of any legitimate or arguable reason; [and] (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.'" *Scottsdale Indem. Co. v. Martinez, Inc.*, 2013 WL 360139, *3 (N.D. Ala. Jan. 29, 2013), quoting *Ex parte Alfa Mut. Ins. Co.*, 799 So.2d 957, 962 (Ala. 2001). And, finally, "[t]o prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So.3d 139, 145 (Ala. 2011) (internal quotation marks and citation omitted).

At bottom, Progressive contends that the Smiths cannot—at this point in time—satisfy the elements of their breach of contract and bad faith[7] claims because there was

---

[7] Progressive's contention in its initial motion to dismiss that the Smiths' bad faith claim is not ripe for adjudication in light of the "legitimate and arguable reasons why there may not be coverage" stated in its complaint for declaratory judgment (Doc. 18, at 3), is curious to the undersigned because by "leaping" to this element the petitioner arguably, albeit in a backhanded manner, admits that the Smiths can meet the other elements of their bad faith claim, the first of which is a breach of contract by the petitioner. (*See* Doc. 18, at 3; *compare id. with id.* at 2.) Even if the undersigned has misconstrued Progressive's argument, it is not well-taken because it assumes that this case is a "normal" bad faith case (*see id.* at 3 ("In a 'normal' bad faith case, 'if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.'")), and should discovery reveal that this case is actually an "abnormal" bad faith case, as the Smiths allege (*see* Doc. 14, at 6), the Smiths' bad faith claim would not be defeated. *See Mutual Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1315 (11th Cir. (Continued)

"no actual denial of the claim for benefits[.]" (Doc. 24, at 2.)[8] The undersigned simply cannot agree with petitioner in this regard.[9] Progressive's May 13, 2014 letter constitutes a denial of the Smiths' claim, whether "conditional" or not. More importantly, because none of the information or testimony the Smiths supplied Progressive served to alter the petitioner's decision (*compare* Doc. 22, Exhibit 1, at 2 *with* Doc. 24, Exhibits 1-3), the undersigned finds that petitioner denied the Smiths' claim, whether that denial is

---

2004) ("An insurer is liable for 'abnormal' bad faith when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review. An insurer also has the responsibility to 'marshal all of the pertinent facts with regard to its insured's claim' before denying coverage. ***Unlike in 'normal' bad faith claims, providing an arguable reason for denying an 'abnormal' bad faith claim does not defeat that claim.***" (internal citations omitted; emphasis supplied)); *American Safety Indem. Co. v. T.H. Taylor, Inc.*, 2011 WL 1188433, *8 (M.D. Ala. Mar. 29, 2011) ("[E]ven if genuine issues of material fact exist as to whether the insured's coverage request and the subsequent denial of coverage were valid, an insurance company can be liable for an abnormal bad-faith failure to investigate that request properly."), *judgment aff'd,* 513 Fed.Appx. 807 (11th Cir. Mar. 14, 2013); *cf. Singleton v. State Farm Fire & Cas. Co.,* 928 So.2d 280, 283 (Ala. 2005) ("In the 'normal' bad-faith case, the plaintiff must show the absence of any reasonably legitimate or arguable reason for denial of a claim. In the 'abnormal' case, bad faith can consist of: 1) intentional or reckless failure to investigate a claim, 2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, 3) the manufacture of a debatable reason to deny a claim, or 4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim." (internal citations omitted)).

[8] The Smiths also make a claim for unjust enrichment in their counterclaim. (*See* Doc. 14, at 7-8.) The undersigned recommends that the Court **DECLINE** to dismiss this claim—for lack of subject-matter jurisdiction—in light of Progressive's interpleading of all premiums paid by the Smiths into the registry of this Court (*see* Doc. 18, at 3 ("Therefore, Progressive did not benefit from or been unjustly enriched by its receipt and use of Respondents'/Counterclaim Plaintiffs' premium payment.")) both because the Smiths' other claims (of breach of contract and bad faith) are not due to be dismissed and because Progressive has cited absolutely no authority for its position that the interpleading of funds works to defeat an unjust enrichment claim (*see* Doc. 18, at 3). Certainly, Progressive knowingly accepted the Smiths' premium payment and this Court would have to see some authority establishing that its interpleading of those funds into the Court's registry means that it retains no control over those monies, WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1003 (1994) (recognizing one definition of "retain" as "[t]o keep or hold in a specific location"). *See Matador Holdings, Inc., supra,* 77 So.3d at 145 (outlining the elements of unjust enrichment).

[9] Indeed, Progressive's "factual attack" on the Smiths' counterclaims cannot "take flight" because the jurisdictional determination is intermeshed with the merits of the claims and there is a dispute as to material facts, that is, whether there was a denial of the claim and, thus, nonperformance (that is, breach) by Progressive.

regarded as actual or constructive. *See New Hampshire Ins. Co., supra,* at *2-3. And Progressive's citation to the *Andersen* case from the Northern District of Alabama does not sway the undersigned to recommend disposition in petitioner's favor inasmuch as the respondents are correct that *Andersen* and the Alabama cases relied upon therein are distinguishable because all arose in the very different context of uninsured motorist insurance coverage. (Doc. 22, at 5 n.5.)[10] The Smiths correctly note that "[i]n [the] UIM context, the insurer is adverse to its insured and the liability of the carrier does not arise until the liability of the tortfeasor and the damages of the plaintiff are fixed[,]" whereas, here, "the Smiths suffered a covered loss which Progressive had a duty to pay." (*Id.*) If this Court was to rule otherwise and dismiss the respondents' counterclaims, the Smiths likely would be deprived of any remedy. *See Ex parte the Cincinnati Ins. Cos.,* 806 So.2d 376, 381 (Ala. 2001) ("If the claims against Cincinnati, in relation to the home-theft, had been filed as a counterclaim in the federal declaratory-judgment action, the parties and the c[ourt]s would have (1) avoided a substantial duplication of effort because (2) the original claim and counterclaim arose out of the same aggregate core of operative facts. It would have served the purposes of Rule 13 for Bargeron to have litigated her claims against Cincinnati in the same action in which Cincinnati sought a declaration of its rights and obligations under the homeowner's insurance policy; it would have avoided a multiplicity of actions, and all matters could have been resolved in one action. Therefore, insofar as Bargeron's claims relate to the matters at issue in the

---

[10] The undersigned notes parenthetically his surprise at Progressive pursuing a motion to dismiss for lack of subject-matter jurisdiction since the counterclaims asserted by the Smiths certainly are not unusual to them. *See, e.g., American Safety Indem. Co., supra,* at *6-8 (addressing on summary judgment whether insurance company had a duty to indemnify and whether the counterclaims asserted against the insurance company—that is, breach of the contractual duty to defend and bad-faith failure to defend and investigate—were due to survive).

federal declaratory-judgment action and depend on the homeowner's policy, they are now barred—they were compulsory counterclaims that should have been asserted in the federal declaratory-judgment action. The trial court should have granted Cincinnati's motion to dismiss those claims. We, therefore, grant the petition and issue the writ of mandamus directing the circuit court to dismiss Bargeron's []claims.") (internal citations, quotation marks, and brackets omitted; brackets added). Indeed, for the Court to rule in the manner requested by Progressive would be contrary to the contents of its order dated October 7, 2014. (*See* Doc. 29, at 3 ("Had this action proceeded without the declaratory judgment action, the Smiths would likely have sued Progressive for breach of contract, bad faith, and unjust enrichment, as they did in their counterclaim. Thus, this action is an 'inverted law suit' as to which the Smiths' right to a jury trial is preserved.").) Thus, this Court may properly exercise subject-matter jurisdiction over the Smiths' counterclaims.

## CONCLUSION

Based upon the foregoing, the Magistrate Judge recommends that Progressive 's Specialty Insurance Company's Rule 12(b)(1) motion to dismiss counterclaim (Doc. 18) be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir.

15

2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 21st day of November, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**